**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

FRANCIS P. CAPORUSSO,

    Plaintiff,

v.                                Case No: 8:23-CV-1515-WFJ-UAM

JACQUELINE A. GARRIS n/k/a
JACQUELINE A. THOMPSON,
and ROBERT G. BUNGARZ

    Defendants.

_____/

**ORDER**

This matter comes before the Court on Defendant Robert G. Bungarz's ("Officer Bungarz") Motion to Dismiss (Dkt. 12) Plaintiff Francis P. Caporusso's ("Mr. Caporusso") Second Amended Complaint (Dkt. 9), Mr. Caporusso's Response (Dkt. 24), Defendant Jacqueline A. Garris's ("Ms. Garris") Joinder and Adoption of Officer Bungarz's Motion (Dkt. 27), and Mr. Caporusso's Memorandum in Opposition (Dkt. 29). After reviewing the parties' briefings, the Court grants Officer Bungarz's motion, denies Ms. Garris's motion, and dismisses Counts II and III of Mr. Caporusso's Second Amended Complaint with leave to amend.

## BACKGROUND

For this motion, the Court accepts the factual allegations in the Second Amended Complaint as true. Mr. Caporusso and Ms. Garris owned a home together in Apollo Beach, Florida. Dkt. 9 at ¶ 8. By December 2021, their relationship had soured, and Mr. Caporusso had moved out. *Id.* at ¶ 9. On December 28, 2021, Mr. Caporusso returned to the home to retrieve personal property. *Id.* When he arrived, the locks had been changed and no one answered his knock. *Id.* at ¶ 10. Mr. Caporusso forced open the front door, retrieved his personal property, and left. *Id.* at ¶¶ 11, 13.

As Mr. Caporusso drove towards the subdivision's exit, he saw an unmarked Hillsborough County Sherriff's Office vehicle driving the opposite direction. *Id.* at ¶¶ 14-15. The driver was Officer Bungarz, a deputy with the Hillsborough County Sherriff's Office. *Id.* Officer Bungarz turned his vehicle around. *Id.* It is unclear from the pleadings whether Officer Bungarz pulled Mr. Caporusso over, or if Mr. Caporusso stopped voluntarily. *See id.* ¶¶ 15-16. Mr. Caporusso got out of his vehicle at Officer Bungarz's request. *Id.* ¶ 16. Other law enforcement officers arrived on the scene, removed Mr. Caporusso's firearm from its holster on his hip, handcuffed him, and placed him in the back of a law enforcement vehicle. *Id.* ¶¶ 17-18.

The officers were responding to a 911 call placed by Ms. Garris when Mr. Caporusso forced open the door to the Apollo Beach property. *Id.* ¶ 17. The officers apparently detained Mr. Caporusso temporarily to investigate a claim that an out-of-state court had issued a protective order against Mr. Caporusso in favor of Ms. Garris. *Id.* ¶ 19. Mr. Caporusso asserts, and for the purposes of this Motion the Court accepts as true, that Officer Bungarz arrived on the scene early because Ms. Garris called his personal cell phone and alerted him to Mr. Caporusso's arrival. *Id.* ¶ 16. For the purposes of this Motion, the Court also accepts as true that Ms. Garris and Officer Bungarz were in a romantic relationship, that Officer Bungarz was living at the Apollo Beach property with Ms. Garris, and that Officer Bungarz knew the out-of-state restraining order was no longer in effect. *Id.* ¶¶ 16, 19, 26.

That same day, Ms. Garris filed a Petition for Injunction Against Domestic Violence. *Id.* ¶ 22. The petition alleged that Mr. Caporusso threatened, stalked, and harassed Ms. Garris, and that he was yelling and unstable when he entered the home that day. *Id.* The injunction was granted after a hearing on January 4, 2022. Dkt. 26 at 3; Dkt. 33 at 53.

The next day, December 29, Mr. Caporusso again went to the Apollo Beach property, this time to retrieve mail. Dkt. 9 ¶¶ 24-25. He was met in the driveway by Officer Bungarz, who, according to the Second Amended Complaint, made intimidating statements. *Id.* ¶ 26. Mr. Caporusso filed a defamation suit against Ms.

3

Garris in Hillsborough County on November 7, 2022, Dkt. 1-4 at 1, and amended his Complaint on April 14, 2023, Dkt. 1-14 at 1. His Amended Complaint named Officer Bungarz as a co-defendant and added additional claims. Dkt. 1-14 at 1, 6-7.

Officer Bungarz removed the case to federal court on July 7, 2023. Mr. Caporusso filed the Second Amended Complaint (Dkt. 9) on July 26, 2023. The Second Amended Complaint states three claims: a claim for common law defamation, against Ms. Garris; a claim under 42 U.S.C. § 1985(3) for conspiracy to interfere with civil rights, against Ms. Garris and Officer Bungarz; and a claim for common law conspiracy to defame, against Ms. Garris and Officer Bungarz.

On August 8, 2023, Officer Bungarz filed his Motion to Dismiss (Dkt. 12), and on August 16, 2023, Ms. Garris filed her answer (Dkt. 20). Mr. Caporusso filed his Response on August 29, 2023. On September 6, 2023, Ms. Garris filed a notice of Joinder and Adoption of Officer Bungarz's Motion to Dismiss (Dkt. 27).

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* In considering a Rule 12(b)(6) motion to dismiss, a complaint's factual allegations are accepted as true and construed in the light most favorable to the plaintiff. *Pielage v.*

*McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

Relatedly, Rules 8 and 10 establish the minimum pleading requirements for a complaint. Under the notice pleading standards set forth in Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To comply with Rule 10, a plaintiff must also bring its claims in separate, numbered paragraphs, with each claim "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A complaint that violates either of these pleading rules is often disparagingly called a "shotgun pleading." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).

## **ANALYSIS**

In his Motion to Dismiss, Officer Bungarz argues that Mr. Caporusso's Second Amended Complaint should be dismissed because: (1) Count II fails to state a cause of action for conspiracy; (2) Count II fails to state a cause of action under 42 U.S.C. § 1985(3) and fails to overcome Officer Bungarz's qualified immunity; (3) Count III fails to state a cause of action for conspiracy to defame and is prohibited by Fla. Stat. § 768.28; and (4) the Second Amended Complaint is a shotgun pleading. Dkt. 12 at 5. The Court will address the shotgun pleading argument, and then discuss the arguments for Counts II and III. Finally, the Court will consider Ms. Garris's Notice of Joinder.

*i. Shotgun Pleading*

Officer Bungarz asserts that the Second Amended Complaint is a shotgun pleading. Dkt. 12 at 22. In *Weiland v. Palm Beach County*, the Eleventh Circuit identified four types of shotgun pleadings: (1) complaints in which each count "adopts the allegations of all preceding counts"; (2) complaints that are "replete with conclusory, vague, and immaterial facts"; (3) complaints that fail to separate each cause of action into separate counts; and (4) complaints that assert multiple claims against multiple defendants without specifying which defendant is responsible for which acts. 792 F.3d 1313, 1321−23 (11th Cir. 2015). No matter the type, all shotgun pleadings exhibit the "unifying characteristic" of failing to give defendants "adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Officer Bungarz asserts that the Second Amended Complaint is "replete with conclusory and vague allegations not obviously connected to any particular cause of action or specific Defendant," so that neither Defendant is aware of the claims brought against him/her and the grounds upon which those claims rest. Dkt. 12 at 23. Further, he states that the Second Amended Complaint fails to specify the legal basis for each count. *Id.*

Neither of these arguments is compelling. Regardless of its ultimate factual or legal merit, the Second Amended Complaint sets out relatively straight-forward

6

claims for each Defendant: (1) that Ms. Garris made defamatory statements concerning an out-of-state protective order, thereby inducing law enforcement to wrongfully detain Mr. Caporusso and deprive him of his firearm, Dkt. 9 ¶¶ 22-23, 30-32; (2) that Ms. Garris made defamatory statements in order to obtain a wrongful protective order against Mr. Caporusso, *id.* ¶¶ 30-32; (3) that Officer Bungarz knew Ms. Garris's statements were false and assisted her in publishing them to third parties, thereby depriving Mr. Caporusso of his civil rights, *id.* ¶¶ 19, 48; and (4) that, as a result, Mr. Caporusso suffered reputational and financial injury, *id.* ¶¶ 34, 38, 45, 49. Each claim was clearly labeled with its legal basis and the defendant(s) against whom it was brought. *Id.* ¶¶ 8, 10, 12.

The Second Amended Complaint gives the Defendants adequate notice of the claims against them and the grounds upon which each claim rests. It is not a shotgun pleading. However, it does suffer from other deficiencies.

*ii. Failure to State a Claim Under Count II*

Relying on 42 U.S.C. § 1985(3), Count II alleges that Officer Bungarz and Ms. Garris conspired to interfere with Mr. Caporusso's civil rights. *Id.* ¶ 40, 41. Section 1985 provides a private cause of action when any two or more individuals conspire to deprive another of the protections, privileges, immunities, and/or rights granted him by United States law.

The U.S. Supreme Court has consistently held that, to prove a violation of §

1985(3), a plaintiff must demonstrate: "(1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (internal quotations omitted) (citing *Griffen v. Breckenridge*, 403 U.S. 88, 102 (1971); *Carpenters v. Scott*, 463 U.S. 825, 833 (1983)). Race-based animus definitively satisfies § 1985(3). *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1337 (11th Cir. 1999) (en banc). In the Eleventh Circuit, gender-based animus suffices as well. *Id.*

Even construing all facts in a light most favorable to him, Mr. Caporusso states no facts showing that Defendants acted with purposeful discriminatory animus to deprive him of his civil rights because of his membership in a protected class. Taking Mr. Caporusso's alleged facts as true, the most reasonable inference from the face of the Complaint is that the defendants' animosity was personal, rather than class-based. Mr. Caporusso's Response does not address this basic deficiency. *See generally* Dkt. 24 at 3-4.

Thus, Count II of the Second Amended Complaint fails to state a claim under § 1985(3) and is due to be dismissed.

*iii. Failure to State a Claim Under Count III*

Count III alleges that Officer Bungarz conspired with Ms. Garris to defame

Mr. Caporusso. The crux of the defamation claim is statements made in an allegedly false Petition for Injunction for Protection Against Domestic Violence. Dkt. 9 at ¶¶ 30, 32. Under Florida law, defamation of a private person has five elements: (1) publication; (2) falsity; (3) negligence; (4) actual damages; (5) defamatory statement. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1105–06 (Fla. 2008).

A Florida civil conspiracy claim requires that at least two parties agree to do an unlawful act, commit an overt act in furtherance of the conspiracy, and cause some damage to the plaintiff. *Plastiquim, S.A. v. Odebrecht Constr., Inc.*, 337 So. 3d 1270, 1273 (Fla. 3d DCA 2022) (citation omitted). To plead conspiracy, "the plaintiff must further identify an actionable underlying tort or wrong." *Id.*

Officer Bungarz argues that the Second Amended Complaint did not state a claim for conspiracy to defame because the doctrine of res judicata bars Mr. Caporusso from relitigating falsity, an element of the underlying defamation claim. Dkt. 12 at 9-10. Officer Bungarz notes that, if the Second Amended Complaint does not state a claim for an actionable underlying defamation tort, it follows that it also does not state a claim for Count III, conspiracy to defame. *Id.* at 10.

While res judicata is typically an affirmative defense, "a party may raise a res judicata defense by motion rather than by answer where the defense's existence can be judged on the face of the complaint." *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982). To apply res judicata in the context of a motion to dismiss, a

9

court must consider evidence indicating that "the issue was actually litigated or that there has been a final judgment in the state proceeding." *Id.* at 1076. Preferably, this evidence will include a copy of the final judgment, a copy of the state court's trial records, and copies of the pleading record. *Id.* "There can be no dispute that if the state proceedings satisfy the requirements for invoking res judicata, the district court must apply the doctrine[.]" *Id.* at 1077.

The existence of a res judicata defense appears on the face of the Second Amended Complaint. Referenced in the complaint, and central to Counts I and III, is a Petition for Injunction Against Domestic Violence. Dkt. 9 at 5-6. Additionally, two Exhibits were attached to the Second Amended Complaint: (1) the Order Setting Hearing on Petition for Injunction for Protection Against Domestic Violence (Dkt. 9-1), and (2) the Petition for Injunction for Protection Against Domestic Violence (Dkt. 9-2).

Further satisfying the standard articulated by the Eleventh Circuit in *Concordia*, the parties introduced all necessary evidence: the pleadings (Dkt. 9-2), the final judgment (Dkt. 26), and the state court's trial records (Dkt. 33). Mr. Caporusso also filed a supplemental pleading addressing whether the state court judgment was binding upon the Court in the instant matter. Dkt. 29 at 2.

Having concluded that it is appropriate to consider the defense of res judicata at this stage, the Court agrees with Officer Bungarz that the underlying defamation

claim is infirm. Mr. Caporusso's cause of action for conspiracy fails because he cannot establish the "actionable underlying tort or wrong." *See Plastiquim, S.A.*, 337 So. 3d at 1273.

In Florida, res judicata, or issue preclusion, has five elements: "(1) the identical issue was presented in a prior proceeding; (2) the issue was a critical and necessary part of the prior determination; (3) there was a full and fair opportunity to litigate the issue; (4) the parties to the prior action were identical to the parties of the current proceeding; and (5) the issue was actually litigated." *Marquardt v. State*, 156 So. 3d 464, 481 (Fla. 2015); *see also Comm. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011) (noting that federal courts sitting in diversity apply state preclusion law).

To establish defamation, Mr. Caporusso must establish falsity. *See Jews for Jesus*, 997 So. 2d at 1106. The Court is precluded from relitigating falsity because that issue was decided by the prior state court judgment in Hillsborough County Case No. 21-DR-017766 (Dkts. 26, 33). All of the res judicata elements are met. The identical issue was presented in the hearing on the domestic violence injunction that Ms. Garris requested. Dkt. 33 at 7–8. The truth of Ms. Garris's allegations was a critical and necessary part of the state court judge's determination as to the basis for a protective order. *Id.* at 11. There was a hearing at which both parties were present, Mr. Caporusso was represented by counsel, both parties testified, and both parties

11

had an opportunity to cross examine each other. *Id.* at 11–12. The parties were identical. *Id.* at 3. And the issue of whether Ms. Garris's allegations were true was actually litigated. *See generally id.*

After the hearing, the state court judge concluded that there was "substantial competent evidence," *id.* at 53, to support the conclusion that Ms. Garris had "reasonable cause to believe [she was] in imminent danger of becoming a victim of domestic violence by [Petitioner]," Dkt. 26 at 3. Thus, "[t]here can be no dispute" that the Court must apply res judicata in the instant case. *See Concordia*, 693 F.2d at 1077. The element of falsity has been previously litigated, and the defamation that underlies Count III's conspiracy charge fails.

Mr. Caporusso argues that, as a coconspirator, Officer Bungarz didn't need to act in furtherance of the conspiracy, as long as he knew of the scheme and assisted it in some way. Dkt. 24 at 5 (citing *State Farm Mutual Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247, 1266 (M.D. Fla. 2021)). But to make out a conspiracy claim, Mr. Caporusso must allege that Defendants agreed "to do an unlawful act." *Plastiquim, S.A.*, 337 So. 3d at 1273.

Mr. Caporusso further asserts that he is not challenging the state court judgment, but rather alleging "garbage in garbage out" and that the state court findings were "boilerplate." Dkt. 29. Presumably, by alleging "garbage," Mr. Caporusso is suggesting that Ms. Garris's testimony before the state court was false.

12

The hearing transcript demonstrates that the state court judge heard and considered testimony from both parties, and Mr. Caporusso's attorney cross-examined Ms. Garris. *See generally* Dkt. 33. Ms. Garris appeared pro se. *Id.* at 10-11. The state court based its judgment on specific factual findings, most specifically that Mr. Caporusso kicked in the front door of the Apollo Beach property. *Id.* at 53. The hearing transcript belies Mr. Caporusso's arguments.

Because, under res judicata, the Court must accept that Ms. Garris did not make a false statement, the Second Amended Complaint fails to state a claim that satisfies the unlawful act element. Because there is no "actionable underlying tort or wrong," Count III is due to be dismissed. As the Court is dismissing both counts against Officer Bungarz, it need not address his assertion of qualified immunity.

*iv. Ms. Garris's Notice of Joinder*

Pursuant to the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim upon which relief can be granted must be filed before any pleading. Fed. R. Civ. P. 12(b). Thus, if a defendant wishes to move to dismiss a case under Rule 12(b)(6), she must file the motion to dismiss prior to filing her answer. *Id.*; Fed. R. Civ. P. 7(a)(2). The Court will construe Ms. Garris's Notice of Joinder as a Motion to Dismiss. *See Weeks v. Equifax Info. Servs., LLC*, No. 8:21-CV-2384-VMC-SPF, 2022 WL 685665 at *3 (M.D. Fla. Mar. 8, 2022). Because Ms. Garris filed the Notice of Joinder after filing her answer, her Notice is denied.

## CONCLUSION

Based on the foregoing, Officer Bungarz's Motion to Dismiss (Dkt. 12) is **GRANTED**. Ms. Garris's Notice of Joinder (Dkt. 27) is **DENIED**. Counts II and III of Mr. Caporusso's Second Amended Complaint (Dkt. 9) are **DISMISSED** without prejudice. The Court cautions the litigants that domestic disputes and lawsuits born of anger or vexation rarely result in successful outcomes in federal court.

**DONE AND ORDERED** at Tampa, Florida, on October 4, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record